# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

Plaintiff,

v.

HECTOR ESTRADA-IGLESIAS,

Defendant.

Case No. 2:19-MJ-00651-BNW-1

**ORDER**

On March 5, 2019, Mr. Hector Estrada-Iglesias (Estrada-Iglesias) received two citations while at the Federal courthouse. The first citation, No. 8036251, charges him with "Failure to Comply with Lawful Direction of Law Enforcement Officer," in violation of 41 C.F.R. § 102-74.385. The second citation, No. 8036252, charges him with "Disorderly Conduct," in violation of 41 C.F.R. § 102-74.390.

The probable cause statement attached to these citations alleges that, on March 5, 2019, Estrada-Iglesias entered the courthouse but refused to show his identification when asked to do so. As a result, he was escorted out of the building. Approximately 90 minutes after that encounter, Mr. Estrada-Iglesias re-entered the courthouse and appeared to be recording with his phone. Officers approached him and told him that recording was prohibited and pointed to a sign so stating. The Officers moved toward him and the revolving door, and Estrada-Iglesias attempted to block the door so that he would not be escorted out of the building. Once outside, Estrada-Iglesias "flipped the…finger" to one of the officers and yelled "fuck you." The officers followed him outside and placed him under arrest for an outstanding warrant. Estrada-Iglesias continued to record the encounter, resisted the arrest, and was taken down to the ground.

Mr. Estrada-Iglesias contests the underlying facts as represented in the statement of probable cause. Trial in this matter is set for Thursday, December 12, 2019.

On August 23, 2019, Mr. Estrada-Iglesias filed a motion to dismiss citations Nos. 8036251 and 8036252 on the grounds that he did not receive proper notice. (*See* ECF No. 13.) In addition, he argues that C.F.R. § 102-74.390, which deals with disorderly conduct, is void for vagueness (both facially and as applied) and overbroad. The government responded on September 3, 2019 (ECF No. 17), and Estrada-Iglesias replied on September 10, 2019 (ECF No. 3).[1]

## I. Notice Requirement

### A. The Parties' Arguments

Mr. Estrada-Iglesias argues that the violation notices he received do not constitute proper notice and that they are defective under Fed. R. Crim. P. 7(c)(1) and Fed. R. Crim. P. 12(b)(3)(B)(v). Specifically, he argues that the probable cause statement should not be considered in determining sufficiency. In addition, Mr. Estrada-Iglesias makes a similar argument on due process grounds.

As to the citation for Disorderly Conduct, Mr. Estrada-Iglesias makes an additional argument. He argues that the violation notice does not identify the actus reus or mens rea and fails to indicate in which of the six different ways Mr. Estrada-Iglesias violated the regulation.

The government's response contends that the cases Mr. Estrada-Iglesias relied on to support the notion that he did not receive proper notice dealt with felonies and Class A misdemeanors—not petty offenses. The government cites to *United States v. Lawrence*, 775 F. App'x 703 (9th Cir. March 4, 2019) (unpublished), and argues the Ninth Circuit has already determined that a violation notice that contains a statement of probable cause, the charge, date, time, and place of the alleged violation constitutes sufficient notice.

The essence of Mr. Estrada-Iglesias' reply is that the type of charging document at hand does not change the demands of due process and that "a misdemeanor citation must contain the same factual and elemental notice requirement as those required for felonies."

---

[1] There appears to be an error in the numbering of the documents on the docket.

**B. Analysis**

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation." For purposes of indictments and informations, this constitutional protection is implemented through Rule 7(c)(1), which requires "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). But here, Mr. Estrada-Iglesias is not charged by way of indictment or information. Instead, he is charged by way of a violation notice. Unlike Fed. R. Crim. P. 7, Fed. R. Crim. P. 58 (which provides that petty offenses can be charged by way of citations or violation notices) does not provide criteria for determining sufficiency.

First, this court disagrees with Mr. Estrada-Iglesias' proposition that a citation must contain the same factual and elemental notice as those required for felonies. Constitutional demands vary depending upon the severity of the punishment at risk. For example, while the Sixth Amendment provides the right to a jury trial "in all criminal prosecutions" (U.S. Const. amend. VI), the Supreme Court did not extend that right to petty offenses. *Lewis v. United States*, 518 U.S. 322, 323-24 (1996). In the context of the right to counsel, only in cases where imprisonment will follow is an indigent defendant entitled to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). With regards to the Fifth Amendment, there are charging safeguards applicable to indictments (through the grand jury process) and complaints (through the role of a neutral magistrate) that do not extend to violation notices, as they are "completed by a law enforcement officer alone, without the oversight of a magistrate." See *United States v. Boyd*, 214 F.3d 1052, 1057 (9th Cir. 2000). In addition, the Ninth Circuit has explained that "[v]astly different levels of judicial scrutiny apply to complaints and violation notices, respectively." *Id.*

Nevertheless, Mr. Estrada-Iglesias is correct in arguing that elementary principles of due process still require that an accused be informed of the specific charge against him—irrespective of the type of charging document at play. The Sixth Amendment guarantees criminal defendants the right to be informed of the nature of the charges against them to permit adequate preparation of a defense. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."); *see also Cole v.*

*Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge . . . [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). The requirement that a charging document must furnish a defendant with a sufficient description of the charge against him has long been recognized to serve a dual function, namely (1) to enable the defendant to adequately prepare his defense and (2) to enable him to plead double jeopardy against a second prosecution. *United States v. Buckley*, 689 F.2d 893, 896 n.3 (9th Cir. 1982), Thus, the question before this court is whether the violation notices provide Mr. Estrada-Iglesias (1) a sufficient description of the charges against him to enable him to prepare his defense and (2) enable him to plead double jeopardy against a second prosecution. "[T]he prohibition against double jeopardy is a cornerstone of our system of constitutional criminal procedure." *United States v. Davenport*, 519 F.3d 940, 947–48 (9th Cir. 2008). The Fifth Amendment's Double Jeopardy Clause has been interpreted to protect persons against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *Monge v. California*, 524 U.S. 721, 727–28 (1998).

As to whether this court should rely on the statement of probable cause to determine sufficiency, other courts, including the Ninth Circuit, have done so. *See, e.g.*, *United States v. Lawrence*, 755 Fed. App'x 703 (9th Cir. 2019) (unpublished) (holding that the citation provided sufficient notice since it included the phrase "disorderly conduct," the date, time, and location of the incident, and the defendant had received a statement of probable cause prior to trial detailing the factual basis of the charge); *United States v. Dubiel*, 367 F. Supp. 2d 822 (D. Md. 2005) (same); *United States v. Nolder*, 2006 WL 1686513 (E.D. Cal. 2006) (same); *United States v. Christiansen*, 2015 WL 920581 (D. Or. 2015) (rejecting defendant's argument that the violation notice was insufficient because it did not comply with Fed. R. Crim. P. 3 and 7 and considering the statement of probable cause in determining sufficiency). While the court is not bound by those cases, the court does not agree with Estrada-Iglesias that the court should analyze issues of sufficiency as applied to violation notices the same way that it would analyze sufficiency as applied to an indictment. This is based on the fact that Estrada-Iglesias is being charged with a

petty offense and, as discussed above, constitutional demands vary based on the type of charge at play.

Against this backdrop, the court will analyze whether Estrada-Iglesias received sufficient notice of the charges against him.

### i. 41 C.F.R. § 102–74.385

In Citation No. 8036251, Estrada-Iglesias was charged with "Failure to Comply with Lawful Direction of Law Enforcement Officer" under 41 C.F.R. § 102-74.385. This regulation provides as follows:

> Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals.

41 C.F.R. § 102-74.385.

In order to prove a violation of this CFR, the government must prove (a) that the incident occurred on federal property; (b) that the defendant failed to comply with either (i) an official sign of a prohibitory, regulatory, or directory nature; or (ii) the lawful direction of federal police officers and other authorized individuals; and (c) that the defendant acted unlawfully, willfully, and knowingly. *United States v. Radin*, 2018 WL 1384514 (S.D.N.Y. 2018). Here, violation Notice No. 8036251 apprised Mr. Estrada-Iglesias of the following information: the date of the alleged offense ("March 5, 2019"), the particular regulation he allegedly violated ("41 C.F.R. § 12-74.385"), the location of the alleged offense ("Lloyd D. George Courthouse"), and the conduct with which he was charged ("Failure to Comply with Lawful Direction of Law Enforcement Officer"). In addition, Mr. Estrada-Iglesias received a statement of probable cause with additional information regarding the conduct charged. Accordingly, the court finds that the violation notice and the statement of probable cause sufficiently described the charges against Estrada-Iglesias to enable him to prepare his defense.

Despite providing sufficient notice, the charge is duplicitous, which implicates double jeopardy concerns. An indictment is duplicitous when it joins two or more distinct and separate offenses into a single count. *United States v. Mancuso*, 718 F.3d 780 (9th Cir. 2013) (citing

*United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976)). A duplicitous indictment compromises a defendant's Fifth Amendment protection against double jeopardy. *United States v. King*, 200 F.3d 1207, 1212 (9th Cir. 1999). Where a single count in an indictment encompasses two or more distinct and separate offenses, a court should dismiss the faulty count or require the government to elect the count or offense upon which it intends to present proof. *United States v. Aguilar*, 756 F.2d 1418, 1422–23 (9th Cir. 1985). The probable cause statement can be read to allege that Estrada-Iglesias violated that particular regulation several times—once at 8:45 a.m., when he refused to show his ID; a second time, upon his return, when he ignored the posted signs prohibiting recording; and a third time when he did not follow the directions from the officers.[2] Thus, the government must elect the conduct upon which it intends to offer proof.

### ii. 41 C.F.R. § 102–74.390

In Citation No. 8036252, Estrada-Iglesias was charged with "Disorderly Conduct" under 41 C.F.R. § 102-74.390. As discussed in more detail below, the court finds the prohibition on "Disorderly Conduct" unconstitutionally vague. Accordingly, it need not address whether Estrada-Iglesias received sufficient notice of the charges against him under 41 C.F.R. § 102-74.390.

## II. Vagueness and Overbreadth

### A. The Parties' Arguments

Estrada-Iglesias moves to dismiss Citation No. 8036252, charging him with Disorderly Conduct under 41 C.F.R. § 102-74.390, on vagueness and overbreadth grounds. First, he argues 41 C.F.R. § 102-74.390 is vague as applied to his conduct, as well as facially vague, because the regulation did not provide him or a reasonable person with notice regarding what behavior constitutes disorderly conduct. Second, he argues the phrase "disorderly conduct" lacks an objective standard and fails to "offer any definition of that term besides, perhaps, outlining the

---

[2] The government seems to be relying on more than one instance of conduct in which Estrada-Iglesias entered the courthouse: "In both circumstances, the government alleges that Defendant was asked to show identification by an authorized officer, and refused to do so, after which he caused a public disturbance." (ECF No. 15 (Gov't's Motion in Limine) at 1.)

four varieties of conduct that would offend the regulation." Finally, he argues 41 C.F.R. § 102-74.390 is overbroad because the regulation "assigns criminal liability by mere reference to conduct considered 'disorderly'" and infringes upon profanity, which is protected speech.

The government responds that Mr. Estrada-Iglesias' conduct "unambiguously falls within § 102-74.390's prohibitions against disorderly conduct that creates a nuisance, obstructs the use of courthouse entrances and exits, *and* that impedes or disrupts performance of official duties by government employees." (emphasis in original). Further, the government responds 41 C.F.R. § 102-74.390 is not facially vague because "the Ninth Circuit has repeatedly rejected th[is] contention . . . ." Finally, the government responds 41 C.F.R. § 102-74.390 is not overbroad because the regulation falls within a section of regulations that "'was created to control certain conduct on federal property' 'in order to preserve the normal functioning of federal facilities.'"

Mr. Estrada-Iglesias replies that "a simple reading of the regulation fails to put [him] on notice that profanity or filming is per se 'disorderly[.]'" He further replies that the two cases the government cites in its assertion that "the Ninth Circuit has repeatedly rejected the contention that 41 C.F.R. § 102-74.390 is facially vague" are not necessarily mandatory authority because one case is unpublished and the other "does not specifically address the regulations in this case . . . ." Finally, Mr. Estrada-Iglesias replies that the regulation is overbroad because "its arbitrary enforcement risks encroaching on constitutionally protected conduct."

**B.     Analysis**

"The Fifth Amendment provides that [n]o person shall . . . be deprived of life, liberty, or property, without due process of law. The [v]agueness doctrine is an outgrowth . . . of [that clause]." *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 819 (9th Cir. 2016) (internal quotations and citations omitted). "A criminal statute is void for vagueness if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). "In a facial challenge, a statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (internal quotations omitted). "In an as-

applied challenge, a statute is unconstitutionally vague if it fail[s] to put a defendant on notice that his conduct was criminal." *Id.* (internal quotations omitted). "For statutes . . . involving criminal sanctions[,] the requirement for clarity is enhanced." *Id.*

To determine if 41 C.F.R. § 102-74.390 is vague (as-applied or on its face), the court must first construe it. It provides:

> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that—
> (a) Creates loud or unusual noise or a nuisance;
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
> (d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

41 C.F.R. § 102-74.390. As described in more detail below, this court interprets this regulation as proscribing "loitering," "disorderly conduct," and "other conduct" and reads subsections (a) through (d) to *only* modify "other conduct."

The Ninth Circuit, in a recent unpublished opinion, reached a different conclusion. *See United States v. Lawrence*, 755 F. App'x 703, 704 (9th Cir. 2019). Citing principles of constitutional avoidance, the court read subsections (a) through (d) to modify "loitering," "disorderly conduct," and "other conduct." *Id.* The Ninth Circuit reasoned that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all. Here, the disjunctive list of modifiers enumerated in subsections (a) through (d) are applicable to the three enumerated offenses of 'loitering,' 'disorderly conduct,' and 'other conduct.'" *Id.* (internal quotations and citations omitted). Thus, "under the doctrine of constitutional avoidance" the court declined to hold 41 C.F.R. § 102-74.390 unconstitutionally vague. *Id.*

Applying the doctrine of constitutional avoidance, this court respectfully disagrees with this interpretation of 41 C.F.R. § 102-74.390.[3]

Under the doctrine of constitutional avoidance, a statute must be construed, "if fairly possible," to avoid finding it unconstitutional. *United States v. Shill*, 740 F.3d 1347, 1355 (9th Cir. 2014). "The doctrine is only applicable where a statute is genuinely susceptible to two constructions after, and not before, its complexities are unraveled." *Id.* (internal quotations omitted); *see also Reno v. ACLU,* 521 U.S. 844, 884 (1997) ("We may impose a limiting construction on a statute, however, 'only if it is 'readily susceptible' to such a construction.'"); *Yamada v. Snipes*, 786 F.3d 1182, 1188 (9th Cir. 2015) ("We will not . . . adopt an interpretation precluded by the plain language of the ordinance."). Accordingly, the doctrine "is a tool for choosing between competing plausible interpretations of a provision." *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015).

To determine if more than one plausible reading of 41 C.F.R. § 102-74.390 exists, the court engages in statutory construction. "In interpreting statutes[,] the court's objective is to ascertain the intent of Congress." *Shields v. United States*, 698 F.2d 987, 989 (9th Cir. 1983). "The primary rule of statutory construction is to ascertain and give effect to the plain meaning of the language used." *Id.*; *see also United States v. Rosas*, 615 F.3d 1058, 1064 (9th Cir. 2010) ("The starting point for our interpretation of a statute is always its plain language."). When construing the plain meaning of a statute it is a "cardinal principle" that a statute should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant."

---

[3] *United States v. Brice*, 926 F.2d 925, 931 (9th Cir. 1991) also held that the predecessor to 41 C.F.R. § 102-74.390 was not unconstitutionally vague. *Brice*, however, did not address whether subsections (a) through (d) applied to "disorderly conduct" or whether the prohibition on "disorderly conduct" was unconstitutionally vague. *See Brice*, 926 F.2d 925. Because prior decisions are not binding precedent on points not discussed in the decision, *Sethy v. Alameda Cty. Water Dist.*, 545 F.2d 1157, 1159-60 (9th Cir. 1976), this court is not bound by *Brice*. The court also notes that *United States v. Stansell*, 847 F.2d 609, 612 (9th Cir. 1988) is inapplicable to its analysis, because it dealt with whether a different regulation, not at issue here, was vague.

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 965 (9th Cir. 2013); *see also TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) ("[A] statute should be construed, if possible, so that no clause, sentence, or word shall be superfluous, void, or insignificant."); *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (construing plain meaning of statute based on "settled canon of statutory construction that the courts are required, if possible, to give effect to every word Congress used"). If the plain meaning of the statute is clear from its text, the analysis ends. *Seattle-First Nat. Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir. 1996).

Here, the court holds that the plain meaning of 41 C.F.R. § 102-74.390 prohibits "loitering," "disorderly conduct," and "other conduct" that is defined in subsections (a) through (d); but subsections (a) through (d) do not apply to or further define "loitering" or "disorderly conduct." This is so because if subsections (a) through (d) applied equally to all three types of conduct, then the words "loitering," "disorderly conduct," and "other" would be superfluous. That is, if one can only violate the regulation by engaging in actions enumerated in subsections (a) through (d), the words "loitering," "disorderly conduct," and "other" mean nothing and serve no purpose in the regulation. Put another way, if Congress's intent was to only penalize conduct that falls within subsections (a) through (d), the regulation would simply need to punish conduct falling within those subsections without the need to differentiate between "loitering," "disorderly conduct," and "other conduct." The regulation would simply need to provide, "All persons entering in or on Federal property are prohibited from exhibiting conduct on property that" followed by subsections (a) through (d). But this is not what the regulation says. It says "persons entering in or on Federal property are prohibited from *loitering*, exhibiting *disorderly conduct* or exhibiting *other conduct*" that falls within subsections (a) through (d). 41 C.F.R. § 102-74.390 (emphasis added). The only plausible reading of this text is that Congress meant to prohibit (1) loitering; (2) disorderly conduct; and (3) "other conduct" that falls within subsections (a) through (d).

Having construed 41 C.F.R. § 102-74.390, the court now turns to whether the offense of "Disorderly Conduct" is vague as-applied to Estrada-Iglesias. As previously noted, a statute is

vague as-applied if it fails to put the defendant on notice that his conduct was criminal. *Harris*, 705 F.3d at 932. Here, Estrada-Iglesias is accused of refusing to show his identification when asked to do so; recording with his phone inside the courthouse; attempting to block the entrance so that he would not be escorted out of the building; "flipping the finger" at an officer; yelling "fuck you;" continuing to record his encounter with officers; and resisting arrest. Thus, the question for an as-applied vagueness challenge is whether 41 C.F.R. § 102-74.390 put Estrada-Iglesias on notice that this conduct would be "disorderly conduct" under the regulation.

Neither the regulation at issue, 41 C.F.R. § 102-74.390, nor 41 C.F.R. § 102-71.20 (containing definitions for words used in the regulation) define "disorderly conduct." "When Congress does not define a term in a statute, we construe that term according to its ordinary, contemporary, common meaning." *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009). Black's Law Dictionary defines "disorderly conduct" as: "A term of loose and indefinite meaning (except as occasionally defined in statutes), but signifying generally any behavior that is contrary to law, and more particularly such as tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality." Merriam-Webster defines "disorderly conduct" as "a petty offense chiefly against public order and decency that falls short of an indictable misdemeanor."

These definitions do not illuminate a clear definition of "disorderly conduct" such that it can be said that Estrada-Iglesias had fair notice that his conduct would violate 41 C.F.R. § 102-74.390's prohibition on "disorderly conduct." Instead, these definitions are circular (disorderly conduct is behavior that "contrary to law" or "a petty offense") and indeterminate ("[a] term of loose and indefinite meaning (except as occasionally defined in statutes)"). What little substance the definitions do offer (behavior that "tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality" or is "chiefly against public order and decency") also do not provide fair notice to Estrada-Iglesias that his behavior would violate the

regulation.[4] Accordingly, the court holds that 41 C.F.R. § 102-74.390's prohibition on "disorderly conduct," which is undefined in the regulation, is vague as applied to Estrada-Iglesias. *See United States v. Williams,* 553 U.S. 285, 306 (2008) (court has struck down statutes that tied criminal culpability to "wholly subjective judgments without statutory definitions"); *Goldhamer v. Nagode*, No. 07 C 5286, 2008 WL 4866603, at *6 (N.D. Ill. Aug. 4, 2008) (prohibiting "disorderly conduct" without further defining this phrase "raise[s] significant vagueness issues.").[5]

---

[4] This court is keenly aware of our history and the dangers posed by terms such as these. "Before the constitutional reforms of the 1960s and 1970s, police operated, at least as a legal matter, under a broad delegation of authority that licensed them to maintain order in public places largely as they deemed appropriate. Most states had loitering, drunk and disorderly, and vagrancy statutes, in addition to laws 'prohibiting breaches of the peace, disorderly conduct, and specific forms of public disorder . . . .' Though these statutes varied significantly in approach, they commonly had the effect, singly or in combination, of conferring a remarkable amount of discretion on the local police. Many citizens were rendered almost perpetually subject to arrest pursuant to catchall vagrancy laws that criminalized the status of 'rogue,' 'vagabond,' 'habitual loafer,' and 'common prostitute, drunkard, or gambler.' Such laws, Justice Frankfurter asserted in the late 1940s, constituted 'a class by themselves' in which statutory precision was 'designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense.' Prior to this period of constitutional reform, however, even conduct-based statutes were characteristically quite broad. One contemporary commentator characterized (with only mild exaggeration) the then-existing legal regime: 'Statutes against breach of the peace, vagrancy, drunkenness, disorderly conduct, unlawful assembly, and curfew are so broad that they 'legally' authorize the police to arrest virtually anyone.' This regime was politically acceptable for an extended period because the police, in the main, did not arrest just anyone. Instead, they used their authority primarily against traditional subjects of heightened police surveillance who lacked effective political power to complain: 'undesirables' of various sorts, and especially minorities . . . ." Debra Livingston, *Police Discretion and the Quality of Life in Public Places: Courts, Communities, and the New Policing*, 97 Colum. L. Rev. 551, 595–96 (1997).

[5] The court is aware that other "disorderly conduct regulations" have been upheld as constitutional. These regulations are distinguishable, however, because the regulations explicitly define "disorderly conduct." *See, e.g.*, *United States v. Agront*, 773 F.3d 192, 195 (9th Cir. 2014) (regulation not vague that prohibited "[d]isorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility.").

Because the court finds that 41 C.F.R. § 102-74.390 is vague as-applied, the court need not reach Mr. Estrada-Iglesias' facial vagueness challenge. Similarly, the court need not reach Mr. Estrada-Iglesias' overbreadth challenge. *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (court need not reach the parties' overbreadth arguments, as court found ordinance unconstitutionally vague).

IT IS THEREFORE ORDERED that Citation No. 8036252, charging Mr. Estrada-Iglesias with "Disorderly Conduct," in violation of 41 C.F.R. § 102-74.390 is dismissed without prejudice.

IT IS FURTHER ORDERED that, to the extent the government wishes to proceed under a different provision of 41 C.F.R. § 102-74.390, it must charge Mr. Estrada-Iglesias and file a notice with the court informing it of the charges by December 5, 2019.

IT IS FURTHER ORDERED that the government must elect the conduct upon which it intends to offer proof for Citation No. 8036251 by December 5, 2019 and provide notice to Mr. Estrada-Iglesias and the court.

DATED: December 2, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE